# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00046-CV

**Lori L. Legere, Appellant**

**v.**

**David Legere, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-FM-03-007363, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our previous opinion and judgment dated August 29, 2012, and substitute the following opinion and judgment in their place. We overrule appellant Lori L. Legere's motion for rehearing and appellee David Legere's motion to reconsider order and for sanctions.

Appellant Lori L. Legere appeals from a district court judgment denying her claims for child support and discovery sanctions against her ex-husband, appellee David Legere, and awarding David attorney's fees against her.[1] We will affirm the district court's judgment.

---

[1] Because the parties share the same surname, we will refer to them by their first names for clarity.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lori and David divorced in 2003. They had one child of the marriage who has been a minor at all relevant times. In their original divorce decree, Lori was appointed sole managing conservator with the exclusive right to designate the child's residence, and David was appointed possessory conservator and ordered to pay child support. In July 2007, after Lori filed suit to modify David's monthly child-support obligations, she and David entered into an agreed order that, among other things, set David's child-support obligation at $900 per month through July 2008. For months thereafter, David's obligation was to be set at an amount equal to 20 percent of his net monthly income, as determined by Lori's counsel. To facilitate the calculation of that amount, the agreed order further required David to "send a copy of a current paystub showing his year-to-date income" to Lori's attorney by July 1, 2008. If David failed to submit the required "current paystub," the order provided that the amount of David's obligation was to default to $1,030 per month.[2]

---

[2] The relevant section of the 2007 agreed order reads as follows:

IT IS ORDERED that David Legere is obligated to pay and shall pay to Lori L. Legere child support of $900.00 per month, with the first payment being due and payable on August 1, 2007 and a like payment being due and payable on the first day of each month thereafter until July 31, 2008.

IT IS ORDERED that David Legere shall send a copy of a current paystub showing his year-to-date income to [Lori's attorney] on or about July 1, 2008. [Lori's attorney] shall, using the Attorney General child support charts, calculate 20% of David Legere's net income to determine the new child support amount to begin on August 1, 2008. If David Legere fails to send such paystub to [Lori's attorney] in July 2008, David Legere is ORDERED to pay and shall pay to Lori L. Legere child support of $1030.00 per month, with the first payment being due and payable on August 1, 2008 and a like payment being due and payable on the first day of each month thereafter . . . . If David Legere sends the paystub as ordered, [Lori's attorney] shall calculate the appropriate child support amount as set forth above and shall send such calculation to David Legere. In such case, David Legere is

2

David later filed his own suit to modify his child-support obligation, seeking to reduce his monthly payment on the basis that he had recently lost his job. During the pendency of that modification suit, the district court issued two temporary orders. The first, signed in March 2009, retroactively reduced several of David's payments that had been prescribed under the 2007 agreed order. For April and May 2008, David's monthly payments were reduced from $900 to $259.73. Likewise, for the monthly payments beginning in August 2008, which were to have been set at either 20 percent of David's net monthly income or $1,030, the temporary order changed the amounts to $680 per month for August 2008 through January 2009, and to $259.73 per month beginning February 2009. In a separate order signed the same day regarding a motion to enforce, the district court also found that David was in arrears on his child support payments in the amount of $719.46 and ordered him to pay Lori this amount. The second temporary order, signed in October 2009, changed David's monthly support payments to $600 per month beginning, retroactively, August 1, 2009. This order also required David to pay $620 in back payments to Lori by October 30, 2009.

The following table summarizes the combined effect of the 2007 agreed order and the two temporary orders on David's monthly child-support obligations. We have emphasized the final or controlling amounts that would be prescribed each month if both temporary orders are given effect:

ORDERED to pay and shall pay to Lori L. Legere child support [sic] the new amount of child support, . . . .

| MONTH | 2007 Agreed Order | March 2009 Temporary Order | October 2009 Temporary Order |
|---|---|---|---|
| April 2008 | $900 | *changed to $259.73* | (not addressed) |
| May 2008 | $900 | *changed to $259.73* | (not addressed) |
| June 2008 | *$900* | (not addressed) | (not addressed) |
| July 2008 | *$900* | (not addressed) | (not addressed) |
| August 2008-January 2009 | 20% of David's monthly net income as determined in July 2008, or $1,030 | *changed to $680* | (not addressed) |
| February 2009-July 2009 | 20% of David's monthly net income as determined in July 2008, or $1,030 | *changed to $259.73* | (not addressed) |
| August 2009-onward | 20% of David's monthly net income as determined in July 2008, or $1,030 | changed to $259.73 | *changed again to $600* |

In September 2010, Lori served David with discovery requests in his modification suit. After he failed to respond, Lori filed a motion to compel and requested sanctions and attorney's fees. Lori set her motion for hearing on December 10, 2010. A few days before the hearing, David nonsuited his modification suit.

A few months later, Lori filed a "Motion to Confirm Child Support Arrearage" in which she sought recovery from David of a claimed child-support arrearage of $9,861.62 for the period between February 1, 2009, and December 31, 2010. The premise of Lori's claim was that David's nonsuit of his modification claim had obviated the two temporary orders and left the 2007 agreed order once again as the governing order in determining his monthly child support.

4

Consequently, Lori reasoned, David now owed her the amounts prescribed in the agreed order for each month between February 2009 and December 2010, not the considerably lower amounts that the court had set in its two temporary orders.

Following a hearing on this motion, the district court found that David had no child-support arrearage and ordered that—

- "David Legere's child support obligation should continue pursuant to the July 20, 2007 Order of the Court[] at the rate of $900 per month";

- "Lori Legere's request for sanctions and attorney's fees is DENIED and any and all claims by Lori Legere are DISMISSED"; and

- Lori pay David's attorney's fees in the amount of $2,500.

It is from this judgment that Lori now appeals.

**ANALYSIS**

Lori brings four issues on appeal. In her first issue, Lori asserts that the district court erred in finding that David owed no child-support arrearage, a calculation that, she urges, rests upon the court's improperly giving effect to temporary orders that were "voided" by David's nonsuit. In her second issue, Lori complains that the district court erred in setting David's future monthly child-support obligation under the 2007 agreed order at $900, as opposed to the default amount of $1,030, because there was legally and factually insufficient evidence that David had ever provided the financial information that was a prerequisite for application of the lower amount. In her third issue, Lori contends the district court erroneously denied and dismissed her request for discovery sanctions and attorney's fees on the basis that David had nonsuited his modification claims. Finally, in her

5

fourth issue, Lori contends that the evidence was legally and factually insufficient to support the district court's award of $2,500 in attorney's fees to David.

**Standard of review**

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citing *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993)). A court's order setting or modifying child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also Rodriguez*, 860 S.W.2d at 415. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Iliff*, 339 S.W.3d at 78 (citing *Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

Under an abuse-of-discretion standard, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but they are not independent grounds of error. *Iliff v. Iliff*, 339 S.W.3d 126, 134 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d at 74. Accordingly, in determining whether the trial court abused its discretion in this case, we apply a two-pronged analysis. *See id.*; *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). First, we must consider whether the trial court had sufficient information on which to exercise its discretion. *Boyd*, 131 S.W.3d at 611. Second, we must determine whether, based on the evidence, the trial court's decision was reasonable. *Id.* In

determining whether there is legally sufficient evidence to support a finding under review, we examine the record for evidence and inferences that support the challenged finding, considering evidence favorable to the finding if a reasonable factfinder could and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005). Evidence is legally insufficient only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). We will not substitute our judgment for that of the factfinder if the evidence falls within the zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822. Evidence is factually insufficient only if the evidence adverse to the finding at issue preponderates so overwhelmingly against the challenged finding that the finding is clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). As the factfinder in this case, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). There is no abuse of discretion if some probative and substantive evidence supports the trial court's order. *See, e.g.*, *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

**Temporary orders**

In her first issue, Lori challenges the district court's determination that there was no child-support arrearage. She argues that the district court's calculation of no arrearage was incorrect

7

because it improperly applied the support payments due under the March and October 2009 temporary orders despite the fact that those temporary orders were "voided," she argues, when David nonsuited his modification suit. Stated another way, Lori argues that the only possible way the district court could find that David did not owe back child support was for the district court to also determine, incorrectly she asserts, that the child-support amounts set under those temporary orders applied to the arrearage calculation rather than the higher amounts prescribed by the parties' 2007 agreed order. That is incorrect, she argues, because the effect of David's nonsuit was to place the parties in the same position they were in before he filed his suit—i.e., before any of the temporary orders that modified his child-support obligations. We disagree.

In Texas, a party has an absolute and unqualified right to take a nonsuit of a pending claim at any time until they have introduced all evidence other than rebuttal evidence. *See* Tex. R. Civ. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011); *In re Bennett*, 960 S.W.3d 35, 38 (Tex. 1997). A nonsuit terminates the case "from 'the moment the motion is filed.'" *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citing *University of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006)). The nonsuit does not affect any pending claim for affirmative relief or motion for attorney's fees or sanctions. *See* Tex. R. Civ. P. 162; *Epps*, 351 S.W.3d at 868. Barring an affirmative claim against the party, the effect of a nonsuit is to extinguish the case or controversy regarding the claimant's claims without an adjudication of their merits—i.e., render their merits moot. *See Estate of Blackmon*, 195 S.W.3d 98 at 100. Nonsuits have also been described as putting the parties back in the position they were in before the suit was filed. *See, e.g.*, *Crofts v. Courts of Civil Appeals for the Eighth Supreme Judicial Dist.*, 362 S.W.2d 101, 104 (Tex. 1962) (noting that nonsuit "places the parties in the

8

position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought"); *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 484 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("When a party nonsuits a legal action, the parties are put back in the same positions as before the filing of the suit." (citing *Crofts*, 362 S.W.2d at 104)).

Thus, David's December 2010 nonsuit terminated or extinguished his modification claims that sought to lower his monthly child-support payment. As a result, at this point in time, David and Lori returned to their pre-suit position on child support—i.e., subject to the terms of the 2007 agreed order that required David to pay, depending on the month and whether he provided the required income information to Lori's counsel, $900 per month, 20% of his monthly income, or $1,030. *See Crofts*, 362 S.W.2d at 104; *Hagberg*, 224 S.W.3d at 484. And having terminated David's modification suit, the nonsuit likewise terminated the district court's temporary orders related to David's modification request. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex. 1995) (noting that nonsuit "vitiates" earlier interlocutory orders that are not decisions on the merits); *Rosser v. Rosser*, 620 S.W.2d 802, 804 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ dism'd) (noting that nonsuit of divorce proceeding eliminates the need for continued enforcement of temporary child-custody and child-support orders).

But this does not mean that David's monthly child-support obligations retroactively reverted back to the terms of the 2007 agreed order as if the temporary orders never had any effect on the parties. As long as the district court had jurisdiction to issue the temporary orders at the time—and it is beyond dispute that it did, *see* Tex. Fam. Code Ann. § 156.006 (West Supp. 2012) (giving court power to render temporary orders in modification suit)—the nonsuit of the underlying modification suit did not render those temporary orders void. *See Pettus v. Pettus*, 237 S.W.3d 405,

9

416 (Tex. App.—Fort Worth 2007, pet. denied) (noting that "the rendition of a divorce decree does not itself nullify any temporary order" and that the obligation fixed by a temporary order continues after divorce decree unless specifically modified by the decree); *Ex parte Shaver*, 597 S.W.2d 498, 500 (Tex. App.—Dallas 1980, no writ) (holding that final divorce decree did not nullify the temporary order with respect to past-due payments; rather, it superseded the temporary order with respect to future support). Thus, had David failed to pay the amounts prescribed by the temporary orders, Lori could have sued to enforce his payments under those temporary orders even if, as here, the case was nonsuited or if the court had issued its final judgment on the matter. *See Shaver*, 597 S.W.2d at 500; *see also* 154 A.L.R. 530 (noting that majority of jurisdictions, including Texas, allow enforcement of temporary orders after entry of final judgment or after nonsuit or dismissal). Consequently, it was not an abuse of discretion for the district court to account for the prior temporary orders in determining whether there was a child-support arrearage.

We overrule Lori's first issue on appeal.

**Future child-support obligation**

In her second issue, Lori challenges the legal and factual sufficiency of the evidence supporting the district court's determination that David's future child-support amounts were $900 per month under the parties' 2007 agreed order. Specifically, she argues that there is insufficient evidence that David provided the appropriate financial documents required by the 2007 agreed order. Thus, Lori asserts, David instead owes the $1,030 per month default amount.

Initially, we note that Lori asserted in her arrearage motion that $900 per month in child support was the correct "amount and frequency of obligation" as of May 18, 2011, when her

10

motion was filed. To that extent, the district court's finding here comports with her own pleadings. But more important, the evidence in the record supports the district court's determination that David provided the appropriate financial documents as required by the parties' 2007 agreed order, thus avoiding the automatic $1,030 per month payment provided for in the agreed order.

The parties' 2007 agreed order required David to pay $900 per month from the date of the order until July 31, 2008. It also required David "to send a copy of [his] current paystub showing his year-to-date income to [Lori's attorney] on or about July 1, 2008." If David did not send this financial information, his monthly child-support payments would automatically increase to $1,030 per month under the agreed order. Otherwise, the agreed order required Lori's attorney, upon receipt of the required information, to recalculate the monthly child-support payments to be 20% of David's net monthly income.

The record in this case includes a copy of a June 27, 2008 letter from David to Lori's attorney in which David states that the document attached to the letter is a copy of his current pay statement, with year-to-date earnings information, as required by the parties' 2007 agreed order. The attached document is an "earnings statement" from Harder Consulting, Inc., showing David's pay rate, period earnings, and his "year-to-date" earnings. Lori contends that this evidence is insufficient because it does not include evidence of his other pay, severance pay, or unemployment benefits that he received during the period. But the 2007 agreed order does not speak to or require this other information. It simply requires David to "send a copy of a current paystub showing his year-to-date income to [Lori's attorney] on or about July 1, 2008." On its face then, David's June 27, 2008 letter and attachment contain the required information; therefore, the automatic increase to $1,030 for failure to provide information is not implicated. More important, the letter

11

and attached information are sufficient information on which the court could exercise its discretion. *See Boyd*, 131 S.W.3d at 611. Further, in the absence of any contradictory evidence or dispute as to their authenticity, the district court's decision that the default increase was not triggered here was reasonable based on this evidence.

Although not specifically challenged on appeal, we would also note that the record supports the district court's determination that David pay $900 per month. First, there is no evidence in the record that Lori's attorney recalculated David's monthly child-support payments as required by the parties' 2007 agreed order. The terms of the parties' 2007 agreement suggest that under such circumstances, David's monthly payment will stay at $900 per month. But even if that is not the case and the contract requires recalculation of the child support to 20% of David's net income regardless of the circumstances, there is evidence in the record that as of June 1, 2009, David's gross-monthly income was $4,500—and twenty percent of $4,500 is $900. Either way, the district court had sufficient information on which to base its determination and, in the absence of a challenge by David regarding his gross versus net monthly income, that decision was reasonable. *See id*.

We overrule Lori's second issue on appeal.

**Sanctions**

In her third issue on appeal, Lori challenges the district court's denial of her motion for discovery sanctions for David's failure to answer discovery in his nonsuited modification case. First, Lori complains that she was denied an evidentiary hearing on this matter and that the sanctions issue was instead peremptorily decided by the court at the arrearage hearing. Second, Lori deduces

12

that because her motion for sanctions was denied at the arrearage hearing, as opposed to a separate evidentiary hearing, the district court must have based its ruling solely on the fact that David had nonsuited the modification case. That was error, Lori contends, because rule 162 provides that nonsuits "have no effect on any motions for sanctions . . . pending at the time of the [nonsuit]." *See* Tex. R. Civ. P. 162. We disagree with Lori's assertions.

Lori's brief in support of her arrearage motion presents as an issue for the district court "What amount of sanctions, if any, should David Legere be ordered to pay Lori Legere?" It also discusses the merits of her motion for sanctions at length:

> In this case, in addition to a judgment for all of the back support that is now owed to [Lori], and based on [David]'s frustration of the court process and his non-suit, [Lori] is seeking sanctions against [David] in the amount of attorney's fees and costs that she has incurred in connection with the modification suit that was ultimately dismissed by him, and in connection with [David]'s refusal to comply with proper requests for income information that was requested so that the case could be finalized appropriately.

And finally, Lori's brief prays for the court to award sanctions in the amount of $9,687.76. In sum, Lori injected the sanctions issue into her arrearage motion and asked the district court to rule on it in connection with her arrearage motion. Accordingly, it was not error for the district court to make that ruling, as Lori had requested. And Lori had the opportunity at the hearing on her arrearage motion to argue and present evidence supporting her sanctions issues. Thus, she was not denied an opportunity to have a hearing on her motion for sanctions.

As for Lori's second assertion, there is nothing in the district court's order, or in any findings of fact or conclusions of law, indicating that the court relied on the nonsuit as the basis for

13

denying her motion for sanctions. To the contrary, the order states that it relied on the "pleadings, argument of counsel, the evidence[,] and post-hearing briefs" in denying Lori's motion for sanctions.

We overrule Lori's third issue on appeal.

**Attorney's fees**

In her fourth and final issue, Lori challenges the legal and factual sufficiency of the evidence supporting the district court's award of $2,500 to David for his attorney's fees. She contends that there is no evidence in the record on which the district court could have based its decision. We disagree.

Under the family code, the award of costs and attorney's fees is within the discretion of the trial court. *See* Tex. Fam. Code Ann. § 106.001 (West 2008) (providing that a "court may award costs in a suit or motion under" Title 5 of the family code); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) ("An attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court."). A trial court abuses its discretion if it rules arbitrarily, unreasonably, or without regard to guiding principles. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). There are several factors a trial court should consider in determining the amount of reasonable attorney's fees to award. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West Supp. 2008) (Tex. State Bar R. art. X, § 9); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Hays & Martin, L.L.P. v. Ubinas–Brache*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied). These factors include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal

community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen*, 945 S.W.2d at 818. But a trial court is not required to receive evidence on each of these factors. *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet.). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id*. at 897. Testimony from a party's attorney about a party's attorney's fees is taken as true as a matter of law if the testimony "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction." *See Blockbuster, Inc. v. C–Span Entm't, Inc.*, 276 S.W.3d 482, 490 (Tex. App.—Dallas 2008, pet. granted, judgm't vacated w.r.m.) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.*

David's attorney attached an affidavit to his response to Lori's motion for arrearages. In that affidavit, David's attorney testified that he had been licensed in Texas since May 2001, that he charged David $250 per hour for his services, which he testified is a reasonable rate for a family law attorney in Travis County, Texas. David's attorney also testified that since David had filed the modification suit, he had worked more than 40 hours trying to resolve the case. Finally, he requested the court award him $5,000 in attorney's fees in connection with Lori's motion for arrearages. Lori did not present any controverting evidence about David's attorney's fees or otherwise challenge David's request for attorney's fees or supporting evidence. Applying the

15

appropriate standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's award of $2,500 in attorney's fees to David.

We overrule Lori's fourth issue.

## CONCLUSION

Having overruled each of Lori's issues, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Goodwin

Affirmed on Motion for Rehearing

Filed: February 22, 2013